IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **BAUTISTA REO PR CORP.,**<br><br>   Plaintiff,<br><br>   v.<br><br>**ESTATE OF ROBERTO MALDONADO MORALES, et al.,**<br><br>   Defendants. | Civil No. 16-1041 (CCC/BJM) |

## ORDER

Óptima Seguros, Inc. ("Óptima") moves to intervene in this foreclosure action pursuant to Federal Rule of Civil Procedure 24(b), governing permissive intervention.[1] Dkt. 142. Óptima contends that permissive intervention would promote judicial economy and allow it to avoid liability with regard to a dispute over insurance proceeds it wishes to pay either to plaintiff or defendants. Plaintiff and defendants opposed, arguing that Óptima does not qualify to intervene under Rule 24 and that the court lacks jurisdiction over Óptima's proposed interpleader complaint. Dkts. 148, 151. Óptima replied. Dkts. 152, 156-1. This matter was referred to me for disposition.[2] Dkt. 145. For the reasons that follow, Óptima's motion to intervene is **DENIED**.

The instant action is a foreclosure suit where judgment has already been entered against defendants and the mortgaged property sold at public auction. On January 11, 2016, Bautista Cayman Asset Company ("Bautista"), a Cayman Islands corporation, invoked the court's diversity

---

[1] Although Óptima's motion refers both to intervention "as of right" and permissive intervention, subsequent filings show that Óptima seeks permissive intervention. *See* Dkt. 152 at 3.

[2] Here, I treat this motion as a non-dispositive matter, finding persuasive the reasoning of magistrate judges who have determined that deciding a motion to intervene does not dispose of a "party's" claim or defense within the meaning of Federal Rule of Civil Procedure 72(a). *See Centerpoint Properties Tr. v. Norberg*, No. 2:13-CV-175-JAW, 2013 WL 4508360 n.1 (D. Me. Aug. 22, 2013) (collecting cases).

jurisdiction to bring suit against the Estate of Roberto Maldonado Morales, its members, and Carmen Margarita Nieves Deyá (collectively "defendants"), all citizens of Puerto Rico. Dkt. 1. On August 15, 2017, the court granted Bautista's unopposed motion for summary judgment, Dkt. 91, finding as follows.

On September 1, 2011, decedent Roberto Maldonado Morales and Carmen Nieves, defendants, executed a loan agreement with Doral Bank whereby the bank agreed to loan them more than $1.3 million. Dkt. 91 at 3. The loan was guaranteed by two assignments of lease agreements and various mortgage notes, which were secured by mortgage deeds encumbering real property in Manatí. *Id.* at 3-4. Bautista acquired the loan agreement and became the holder of the relevant mortgage notes, promissory notes, and security for the loan agreement. *Id.* at 2, 4. Defendants breached their obligations under the loan agreement by failing to make payments, and, as of September 30, 2016, owed Bautista over $1.5 million. *Id.* at 4-5. The terms of the loan agreement permitted Bautista to declare the principal and accrued interest due upon defendants' default, and the pledge agreement which defendants had entered was valid. *Id.* at 10-13. The court found defendants indebted to Bautista, *id.* at 13, and entered judgment for Bautista in the amount of $1,562,211.83, Dkt. 92. Later, Bautista assigned its rights to continue with the action to Bautista REO PR Corp. ("Bautista REO"), and the court permitted the substitution of parties. Dkt. 129.

As of February 27, 2019, defendants had not satisfied the judgment. The court thus ordered the sale of the property in Manatí. Dkts. 133, 134. A special master offered the property for sale at public auction on April 5, 12, and 22. Dkt. 136 at 2. No bidder attended the sale, and the property was adjudicated to Bautista REO for the amount of $823,350. Dkt. 136 at 2. The court confirmed the sale on June 28. Dkt. 138. As third persons continued to occupy the property and refused to surrender the same to Bautista REO, the court entered an order of eviction on August 14. Dkt. 140.

On July 27, 2020, Óptima moved to intervene so as to bring an interpleader action related to the payment of insurance proceeds. Dkt. 142. According to Óptima, before the court entered judgment, defendants had acquired an insurance policy to cover the Manatí property. *Id.* at 1. The policy covered the property from September 26, 2016 to September 26, 2017. *Id.* Hurricane Maria struck Puerto Rico on September 20, 2017, damaging the Manatí property that would later be sold at public auction to Bautista REO. *See id.* at 2. The Estate of Roberto Maldonado Morales filed a claim, and Óptima represents that it is ready and willing to pay the insurance proceeds. *Id.* However, because both the Estate of Roberto Maldonado Morales and Bautista REO claim entitlement to those proceeds, Óptima does not know who to pay and asks to bring an interpleader action by means of a motion to intervene. Although Óptima may be correct that its proposal would promote efficiency, it has not placed this court in a position to grant its motion.

"On timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. Pro. 24(b)(1). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. Pro. 24(b)(3).

"Rule 24's timeliness requirement is of great importance." *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1230 (1st Cir. 1992) (citing cases). Courts must decide the timeliness question on a case-by-case basis, examining the totality of the circumstances. *Id.* "The more advanced the litigation, the more searching the scrutiny which the motion must withstand." *Id.* Courts ordinarily "look with some disfavor upon motions to intervene filed after entry of final judgment." *Garrity v. Gallen*, 697 F.2d 452, 455 n. 6 (1st Cir. 1983).

Here, Óptima contends that its motion is timely, as the property was only recently adjudicated to Bautista REO and Óptima only recently learned that both defendants and Bautista REO sought the insurance proceeds. The property was adjudicated to Bautista REO in April 2019, roughly fifteen months before Óptima moved to intervene, which is not entirely "recent." Further, Óptima has provided this court with no details regarding when it learned of Bautista REO's claim of entitlement to the insurance proceeds, making it difficult to determine whether Óptima only recently learned of the predicament in which it finds itself. With such little information, I cannot deem this motion timely.

Even if I assume Óptima's motion is timely, however, Óptima has not sufficiently identified the reasons why its proposed interpleader suit raises questions of law or fact that are common to the original action. The main action involved a breach of the loan agreement executed between defendants and Doral Bank. The bank had agreed to loan defendants over $1.3 million, and that loan was secured by mortgage deeds that encumbered a property in Manatí. Defendants breached their obligations under the loan agreement by failing to make agreed upon payments, and, under the terms of the agreement, Bautista could declare the principal and accrued interest due. Rather than explaining why it believes these facts are relevant to the interpleader action it wishes to bring, Óptima relies on a blanket assertion that "this Honorable Court has knowledge of the facts common to the instant case and the corresponding Interpleader Complaint." Dkt. 142 at 2.

Apparently, Óptima's argument for intervention rests on the fact that it insured a property encumbered by mortgage deeds, which secured the loan agreement between defendants and Doral Bank. Beyond that, however, Óptima has offered very few details to help the court understand the common questions of law and fact it expects will arise between the original action—a dispute

arising from the breach of a loan agreement—and the proposed action—a dispute that revolves around conflicting claims to insurance proceeds and likely implicates the terms of the insurance policy. Indeed, Óptima has provided no details regarding the insurance policy itself, its terms and conditions, or even the amount it states it is "ready and willing to pay." Dkt. 142 at 2.

More importantly, Óptima has failed to show that this court has jurisdiction over its proposed action. Although supplemental jurisdiction generally permits claims brought by those who intervene as a matter of right, "permissive intervention ordinarily must be supported by independent jurisdictional grounds." *Int'l Paper Co. v. Jay*, 887 F.2d 338, 346 (1st Cir. 1989) (citations and internal quotation marks omitted). Nonetheless, Óptima claims that this court has supplemental jurisdiction over the interpleader suit it hopes to bring by means of permissive intervention.

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a); *see Godin v. Schencks*, 629 F.3d 79, 83 (1st Cir. 2010). Claims are part of the same "case or controversy" for the purposes of section 1367(a) if they "'derive from a common nucleus of operative fact' or 'are such that [they] . . . would ordinarily be expected to [be] tr[ied] . . . in one judicial proceeding.'" *Penobscot Indian Nation v. Key Bank of Me*., 112 F.3d 538, 564 (1st Cir. 1997) (second, third, and fourth alterations in original) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

Here again, Óptima has provided too few facts to permit this court to find that its proposed interpleader action forms part of the same case or controversy that launched Bautista's original suit. To the contrary, the event giving rise to the proposed interpleader action—the damage caused

by Hurricane Maria and related insurance claims—occurred after this court entered judgment finding that defendants had breached their loan agreement.

Nor has Óptima shown that this court has jurisdiction under the two means by which interpleader suits are typically brought to federal court. A plaintiff may bring an interpleader claim pursuant to either Federal Rule of Civil Procedure 22 ("Rule 22" or "rule interpleader") or 28 U.S.C. § 1335 ("statutory interpleader"). Jurisdictional requirements vary, depending on which form of interpleader a stakeholder pursues.

To bring a statutory interpleader claim, a plaintiff must establish jurisdiction through minimal diversity among "[t]wo or more adverse claimants" who "are claiming or may claim to be entitled to such money or property," the amount in controversy need only exceed $500, and that amount must be deposited with the court. 28 U.S.C. § 1335(a); *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967); *Metro. Prop. & Cas. Ins. v. Shan Trac, Inc.*, 324 F.3d 20, 23 (1st Cir. 2003). Minimal diversity means that at least two defendants must be citizens of different states. *State Farm*, 386 U.S. at 530. Here, the original plaintiff, Bautista, was a citizen of the Cayman Islands, and defendants are citizens of Puerto Rico, so minimal diversity requirements are satisfied. However, Óptima has not stated that the amount in controversy exceeds $500 and cannot, therefore, show that jurisdiction is proper were this a statutory interpleader claim. Nor has Óptima described the nature of the damages to the property in a manner that would permit this court to draw any conclusions about the potential value of the claim. And Óptima has neither stated what amount of money it is prepared to pay, nor deposited those funds with the court, which is a prerequisite to establishing jurisdiction over an interpleader action.[3] *In re Sinking of M/V Ukola*, 806 F.2d 1, 5 (1st Cir. 1986).

---

[3] I also note that Bautista urges Óptima to simply deposit the insurance proceeds with the court pursuant to Federal Rule of Civil Procedure 67. Dkt. 148 at 3. That too, however, would be inappropriate at this juncture. A deposit

To bring a rule interpleader claim, a plaintiff must establish federal jurisdiction in the usual way. *See U.S. Indus., Inc. v. Laborde*, 794 F. Supp. 454, 459 (D.P.R. 1992) (Pieras, J.). Federal question jurisdiction is not at issue here. Diversity jurisdiction pursuant to 28 U.S.C. § 1332 requires complete diversity and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a); *Álvarez-Torres v. Ryder Mem'l Hosp., Inc.*, 582 F.3d 47, 53 (1st Cir. 2009). Complete diversity means that no plaintiff is a citizen of the same state as any defendant. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). In other words, "[f]or interpleader under [R]ule 22(1) predicated on diversity jurisdiction, there must be diversity between the stakeholder on one hand and the claimants on the other." *Lee v. W. Coast Life Ins. Co*., 688 F.3d 1004, 1007 (9th Cir. 2012). Here again, Óptima has not informed the court whether the amount in controversy in its proposed interpleader action exceeds $75,000. Moreover, both Óptima and defendants are citizens of Puerto Rico, undermining any claim to complete diversity between stakeholder and claimants. Thus, Óptima has not shown that the court has jurisdiction either under statutory or rule interpleader.

In short, Óptima provides too little information to permit this court to find its motion timely, and it has failed to identify with any specificity the questions of law and fact it believes its proposed suit shares in common with the original action. I also find that intervention three years after judgment was entered undermines parties' strong interest in finality. Moreover, this court cannot exercise jurisdiction over the proposed suit. Accordingly, Óptima's motion to intervene is **DENIED**.

---

under Rule 67 is appropriate where parties dispute a sum-certain. *See CASCO, Inc. v. John Deere Const. Co. & Forestry Co*., 293 F.R.D. 99, 100 (D.P.R. 2013). Here, it is not clear what sum Óptima wishes to deposit. Rather, Óptima explains that, "[d]ue to the nature of the insurance contract and the applicable law, the contracting parties must agree on the amount of the adjustment prior to the issuance of payment and resolution of the claim." Dkt. 152 at 2. And defendants maintain that the amount of insurance proceeds they claim remains disputed and that negotiations are ongoing. *See* Dkt. 160-2.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, this 14th day of October, 2020.

                                                    **S/Bruce J. McGiverin**
                                                    BRUCE J. MCGIVERIN
                                                    United States Magistrate Judge